**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 23-cr-327 (RC)** |
| **v.** | : | |
| | : | |
| **TODD BRANDEN CASEY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO TRANSFER VENUE**

Defendant Todd Branden Casey, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to transfer venue in this case to another district, including the District of Colorado. Casey fails to establish that he as "an individual defendant" cannot obtain a fair and impartial trial in this district under Fed. R. Crim. P. 21(a), and this Court should deny his motion. *See United States v. Webster,* 102 F.4th 471 (D.C. Cir. 2024).

## BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, by approximately 2:00 p.m., defendant Todd Casey was located on the West Plaza of the United States Capitol building. He was dressed in a brown page-boy hat, a patterned jacket, a yellow and gray t-shirt and a multi-colored neck gaiter.



At that time, a police line had formed on the West Plaza on Capitol grounds in an effort to protect the U.S. Capitol. The police used metal barriers to protect this line. At approximately 2:11 p.m., Casey cursed approached the police line and screamed at officers, "Fuck you. Fuck all of you. Fuck all of you." Casey then slammed his hands against the metal barriers, and appeared to try to break through the barriers and the police line. A few minutes later., Casey taunted officers, shouting, "take that swing at me, motherfucker. Take that swing. I ain't afraid. What are you saying? Speak up!" and "I would have come locked and loaded if I knew this was happening!" Casey then galvanized other rioters by urging them to "push. You gotta come from the back. Rollover. These fucking cowards, they'll just hit you with sticks. That's all they got." Moments later, Casey screamed, "where's Schiff? I'd like to beat his ass right in front of you. Nancy Pelosi too. Mitch McConnell – these traitors." Casey again galvanized the other rioters, and said, "now! Push it! Push it!" Other rioters responded to these efforts. They baited and cursed at the officers, and aggressively kicked the metal barriers in order to knock them down.

At approximately 2:33 p.m., while still on the West Plaza of the U.S. Capitol, Casey shoved Sergeant G.N. around the chest area. Below is a still image from Sergeant G.N.'s body-worn camera showing Casey's hand as it reached toward Sergeant G.N.'s chest.



Casey also assaulted MPD Officer B.R. After the police line that formed further back on the West Plaza, rioters swarmed the police office officers. Many rioters surrounded MPD Officer B.R. and Casey reached for and grabbed Officer B.R. by the shoulder of Officer B.R.'s jacket. Casey then shoved Officer B.R. toward the U.S. Capitol Building, until a Capitol Police officer pulled Officer B.R. away from Casey. Below is a still image from an open-source video showing Casey grabbing Officer B.R. by the shoulder.



By approximately 3:00 p.m., Casey had moved up to the Lower West Terrace to the vicinity of an archway that connected the inaugural stage to a corridor that provided access to the interior of the U.S. Capitol Building, commonly known as "the Tunnel." Police officers formed a line inside of the Tunnel and tried to keep rioters from advancing further into the U.S. Capitol building. Casey aggressively pushed through other rioters inside the entryway of the Tunnel to reach the front of the police line. Casey stood at the first set of double doors inside of the Tunnel in front of the police line. Below is a still image from an open-source video showing Casey inside the tunnel with his neck gaiter over his face.



Casey remained in the Tunnel near the police line for approximately nine minutes. At 3:10 p.m., Casey left the Tunnel for the first time, and` re-entered at 3:12 p.m. Casey then joined the crowd in pushing against the police line in a rocking motion commonly referred to as a "heave ho" push. At some point, Casey left the Tunnel, only to re-enter for the third time at 3:15 p.m. Casey again joined the crowd in pushing against police by pushing up against other rioters who were pushing against police. Below is a still image from open-source video showing Casey in the middle of the heave-ho push at this time.



At 3:18 p.m., the police inside the Tunnel succeeded in pushing rioters, including Casey, out of the Tunnel.

Based on his actions on January 6, 2021, the defendant was charged with two counts of Civil Disorder under 18 U.S.C. § 231(a)(3); two counts of Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. § 111(a)(1); one count of Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2); one count of Engaging in Physical Violence in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(4); one count of Impeding Passage Through the Capitol Grounds or Buildings under 40 U.S.C. § 5104(e)(2)(E); and an Act of Physical Violence in the Capitol Grounds or Buildings under 40 U.S.C. § 5104(e)(2)(F). ECF 6.

The defendant now moves for a change of venue. ECF 33. First, he contends that he would be presumptively prejudiced at a jury trial in Washington D.C. for numerous reasons. The defendant also suggests that among the other districts to which the Court should considering

transferring venue, the Court should consider transferring venue to the District of Colorado for convenience. The defendant has failed to address how his arguments survive *United States v. Webster*, 102 F.4th 471, 479-484 (2024), which holds that voir dire will rectify any alleged imbalance. Where the defendant has not addressed this binding precedent, each of the defendant's arguments is without merit, and the motion should be denied.

## **ARGUMENT**

The Constitution provides that "[t]he trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment similarly guarantees the right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These provisions provide "a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958). Transfer to another venue is constitutionally required only where "extraordinary local prejudice will prevent a fair trial." *Skilling v. United States*, 561 U.S. 358, 378 (2010); *see* Fed. R. Crim. P. 21(a) (requiring transfer to another district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there").

The primary safeguard of the right to an impartial jury is "an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (italics omitted). Thus, the best course when faced with a pretrial publicity claim is ordinarily "to proceed to voir dire to ascertain whether the prospective jurors have, in fact, been influenced by pretrial publicity." *United States v. Campa*, 459 F.3d 1121, 1146 (11th Cir. 2006) (en banc). "[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc) (per curiam). And, after voir dire, "it may be found that, despite

earlier prognostications, removal of the trial is unnecessary." *Jones v. Gasch*, 404 F.2d 1231, 1238 (D.C. Cir. 1967).

## I. Casey has Failed to Demonstrate a Presumption of Prejudice at a Jury Trial in Washington, D.C.

The defendant contends that prejudice should be presumed in this district for five primary reasons: (1) the number of federal employees living and working with the District of Columbia, (2) the impact of January 6 on Washington, D.C., (3) the results of a survey of potential jurors, (4) the results of a media analysis conducted by Select Litigation, and (5) pretrial publicity surrounding the events of January 6. But every court in this District and the D.C. Circuit has rejected these arguments before.

In *United States v. Webster*, 102 F.4th 471, 479 (D.C. Cir. 2024), the D.C. Circuit rejected identical arguments by Webster that his jury trial was presumptively prejudiced based on the characteristics of the D.C. jury pool, the nature and volume of the national local media and the timing of the trial. *See United States v. Webster*, Brief of Appellant, 2023 WL 8171601 at 19-28. The D.C. Circuit reasoned that Webster's (and Casey's) emphasis on polling, and general media coverage of January 6th missed the central inquiry:

> But Webster's focus on the jury pool's opinion of January 6th and its perpetrators misses the point. We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree. Generalized disapproval of criminal conduct – even the specific conduct at issue in a defendant's case-says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not. What the Constitution forbids is for a juror to hold a firmly entrenched view about an *individual defendant's* guilt or innocence before the trial starts.

*United States v. Webster*, 102 F.4th at 480. Like Webster, Casey has not (and cannot) show that he, as "an individual defendant", would be presumptively prejudiced at a jury trial in Washington,

D.C.

Casey's other arguments for presumptive prejudice fare no better under the *Webster* decision. The D.C. Circuit rejected Casey's arguments that the District's jury pool is structurally incapable of producing fair juries due to its size (*id.* at 480-481 ("The District's size is no impediment to producing a fair jury. It consists of more than 600,000 individuals.")) or political makeup (*id.* at 481 ("But the political inclinations of a populace writ large say nothing about an individual's ability to serve impartially in adjudicating the criminal conduct of an individual.")). The D.C. Circuit also rejected any argument that the timing of the trial was presumptively prejudicial. *Id.*

**V.    The Publicity and Reduction of the Jury Pool Caused by Other January 6 Trials in this District Do Not Support a Change of Venue.**

The defendant argues that he is likely to be prejudiced by the publicity generated by other recent trials involving charges based on the events of January 6. ECF 33 at 16-17. Although the trials in those cases have generated media coverage, that coverage was not confined to the District of Columbia and was focused on the defendants in those cases, without mentioning Casey. The defendant cannot show that jurors in this District, carefully selected after a thorough *voir dire* and properly instructed in the law, would be more likely to convict him simply because they were exposed to media coverage of other January 6 trials. Nor can the defendant show that any such asserted prejudice would be meaningfully different in another jurisdiction, given the national coverage of these trials. Additionally, by the time the defendant has gone to trial, even more time will have passed since the siege at the Capitol on January 6, 2021, and since these initial January 6 trials.

The defendant also argues that, as additional January 6 trials take place, the pool of potential jurors will shrink, making it more difficult to obtain an impartial jury. But each trial will

barely touch the potential jury pool.

### VI.    A Change of Venue Is Not Warranted Under Federal Rule of Criminal Procedure 21(b) Based on Convenience or the Interest of Justice.

The defendant suggests (ECF 33 at 20) that this Court should transfer venue to the District of Colorado. The government assumes that the defendant made this request pursuant to Rule 21(b), which allows transfer to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The defendant does not assert an argument about why this case should be transferred to the District of Colorado other than stating that this is where Casey resides. Simply stating that the defendant resides in a District does not support a transfer of venue under Rule 21(b).

"There is a general presumption that a criminal prosecution should be retained in the original district." *United States v. Bowdoin*, 770 F. Supp. 2d 133, 138 (D.D.C. 2011) (quoting *United States v. Baltimore & Ohio R.R.*, 538 F. Supp. 200, 205 (D.D.C. 1982)). That presumption is rooted in the Constitution, which states that "[t]he trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. And it is reflected in the Federal Rules of Criminal Procedure, which state that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. To obtain a change of venue under Rule 21(b), a defendant must demonstrate that trial in the district where the crime occurred "would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Bowdoin*, 770 F. Supp. 2d at 138 (quotations marks omitted). Factors a court considering a motion to transfer venue are:

(1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be

involved; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district of division involved; and (10) any other special elements which might affect the transfer.

*Id.* at 137-38. Those factors strongly support keeping the prosecution in this District. The events at issue took place in the District of Columbia, and the witnesses and evidence are in this District. Holding a trial in the District of Colorado would require a significant and unnecessary expenditure of government funds for the prosecution team and witnesses to travel to that district.

Moreover, the defendant does not provide a reason for transfer under Rule 21(b) that supports an interest of justice transfer. A trial in the District of Colorado would undoubtedly be more convenient for the defendant. But that fact alone is not sufficient to justify transfer, particularly considering that the defendant chose to travel to Washington, D.C. to commit his crimes at the U.S. Capitol.

## CONCLUSION

For the foregoing reasons, the defendant's motion to transfer venue should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Aliya Khalidi*

ALIYA KHALIDI
Assistant United States Attorney
MA Bar Number 682400
U.S. Attorney's Office for the District of Columbia
601 D Street, NW Washington, D.C. 20001
(202) 252-2410
Aliya.khalidi@usdoj.gov

*/s/ Kaitlin Klamann*

KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-6778
Kaitlin.klamann@usdoj.gov
IL Bar No. 6316768